

Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

**DAVID KELLEY**

David.Kelley@dechert.com
+1 212 698 3580  Direct
+1 212 698 0460  Fax

May 19, 2023

**VIA CM/ECF**

Honorable Nina R. Morrison
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Su v. Advanced Care Staffing, LLC, et al.*, No. 1:23-cv-02119-NRM-MMH

Dear Judge Morrison:

Pursuant to Sections 5.1 and 5.2 of the Court's Individual Practice Rules, we write to request a pre-motion conference to address ACS' anticipated dispositive motion.  The Complaint attempts to plead a minimum wage count and an overtime count against Defendants Advanced Care Staffing, LLC and Samuel Klein (together, the "Defendants") under the Fair Labor Standards Act ("FLSA"), 26 U.S.C. §§ 206–07.  Because the allegations against the Defendants fail to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Defendants should be permitted to move to dismiss the Complaint.

ACS is a Brooklyn-based staffing agency that recruits and places hundreds of healthcare workers in healthcare facilities across New York, New Jersey, and Connecticut.  ACS expends significant resources to recruit, train and bring foreign nurses to the United States to help fill a critical shortage of skilled nursing in health care facilities.  The substantial benefits provided by ACS to these employees include, among others, immigration-related services, licensing services, airfare, housing, and groceries, all of which enable them both to come to the United States in the first place, and to obtain lawful permanent resident status.  In exchange for ACS' substantial investment in each of its employees and the substantial benefits ACS provides to them, ACS employees sign an employment agreement that commits them to work for a three-year term of employment.  All such employees are paid well in excess of minimum wage (and indeed in excess of the prevailing wage for nurses), as well as overtime for all hours worked over 40 hours in a given workweek. As part of that employment agreement, ACS and its employees agree to arbitrate disputes between them under the auspices of the American Arbitration Association and in accordance with applicable law.



Honorable Nina R. Morrison
May 19, 2023
Page 2

The U.S. Department of Labor, through its Acting Secretary Julie A. Su ("DOL"), alleges that ACS violates the FLSA's minimum-wage and overtime provisions by agreeing with its employees to arbitrate claims either party may have against the other, including any claims for breach of contract in the event an employee quits before his or her contractually agreed-upon three-year term of employment has concluded.  DOL alleges that even if ACS does not recover a penny from an employee who breaches his contract with ACS, the mere fact that ACS **may** recover against an employee subjects the employees' wages to illegal "kickbacks" in violation of the FLSA.

Under the U.S. Constitution's Article III standing requirement, the FLSA's basic framework, and the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), DOL both (a) lacks standing, and (b) fails as a matter of law to state a claim.  Nowhere in the Complaint does DOL allege any facts demonstrating that any ACS employee— including the only former ACS employee DOL names in its Complaint (Benzor Shem Vidal)— has *actually* had their wages reduced below the FLSA-mandated minimum wage and overtime requirements.  As an initial matter, then, DOL lacks standing because no ACS employee has suffered a concrete and particularized harm.  For the same reason, DOL fails to state a claim as a matter of law because the Second Circuit's FLSA pleading standards require an FLSA plaintiff to point to the specific amount by which an employee's wages were reduced below the minimum wage or overtime requirements.  Finally, DOL's novel theory that the mere possibility of recovering contract damages against a former employee somehow subjects an employee's wages to a kickback has no basis in law and must fail.  The specific grounds for the proposed motion are as follows:

1.      ***DOL lacks Article III standing to sue the Defendants for violating the FLSA***.  The United States Supreme Court has explained that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent,' **not conjectural or hypothetical**."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Def's of Wildlife*, 504 U.S. 555, 560 (1992) (emphasis added).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340.  Put simply: "No concrete harm, no standing."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).  Here, DOL's Complaint alleges nothing more than a hypothetical future harm:  someday it is possible that an arbitrator might award ACS damages such that the employee's wages fell below the federal minimum wage.[1]  Contrary to DOL's assertion that Vidal was not paid his wages "free and clear," (Compl. ¶ 78), DOL's *own* factual allegations confirm Vidal was paid all wages owed to him.  *See* Compl. ¶¶ 72, 75–77 (demonstrating Vidal was paid for all hours worked at a rate well above the minimum wage).  Further, DOL has not

---

[1] The Defendants reject the premise that an award of contract damages has any bearing on an employee's wages, as discussed below.



Honorable Nina R. Morrison
May 19, 2023
Page 3

alleged Vidal paid ACS any penalty, fee, or damage award.  Thus, Vidal is unharmed.  Because DOL has not identified a "concrete and particularized harm" but rather a "conjectural or hypothetical" one, it lacks Article III standing and its Complaint must be dismissed.

*2. DOL fails to plead facts demonstrating that the Defendants violated the FLSA.*  For the same reason DOL lacks Article III standing, DOL fails as a matter of law to state claims for FLSA violations against the Defendants.  In the Second Circuit, "to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (concluding plaintiffs failed to plead an FLSA overtime violation "because Plaintiffs have not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours.").  Similarly, a plaintiff's burden in pleading an FLSA minimum wage claim "is arithmetical."  *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015).  "An employee cannot state a claim for a minimum wage violation unless his average hourly wage falls below the federal minimum wage."  *Id.* (cleaned up).  DOL's allegations confirm that ACS paid its employees all minimum wage and overtime wages owed.  *See* Compl. ¶¶ 72, 77.  Accordingly, DOL's factual allegations undermine its argument that ACS' employees' wages fell below the FLSA minimum wage and overtime requirements.  DOL only points to a hypothetical future arbitration award (in an arbitration which has been stayed) that could theoretically bring a single former employee's wages below the FLSA floor (assuming a "kickback" theory that is itself fatally flawed).  *See, e.g.*, *Walsh v. Lalaja, Inc.*, 565 F. Supp. 3d 766, 772 (E.D.N.C. 2021) (granting motion for judgment on the pleadings where DOL fails to allege any facts about the amount of wages the employer allegedly failed to pay its employees).  Without pleading that ACS *actually* failed to pay its employees below the federal minimum wage, DOL fails to state a claim for violations of the FLSA.

*3. DOL's novel theory that potential contract damages are a kickback of earned wages fails as a matter of law.*  The FLSA requires "a minimum wage must be paid free and clear of any deductions or kickbacks to the employer."  *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 299 (E.D.N.Y. 2013) (cleaned up).  "Courts have generally found deductions for 'tools of the trade' such as uniforms, vehicles and other costs that are specific business expenses of the employer, and that are primarily for the benefit of the employer, to be 'kickbacks.'"  *Park v. FDM Grp. (Hldgs.) PLC*, 2017 WL 946298, at *3 (S.D.N.Y. Mar. 9, 2017), *vacated in part on other grounds by Park v. FDM Grp., Inc.*, 2018 WL 4100524 (S.D.N.Y. Aug. 29, 2018) (granting motion for reconsideration to permit plaintiff leave to file a Second Amended Complaint).  In *Park*, the district court concluded that a $20,000 liquidated damages provision for breaking a two-year employment agreement was not a kickback because such a provision "is not a deduction for tools used or costs incurred in the course of Plaintiff's performance of her job," and that if the plaintiff completed her two-year employment obligation, she would owe her employer nothing.  *Id.* at *4.  Because the plaintiff did not allege any deductions or withholdings that reduced her



Honorable Nina R. Morrison
May 19, 2023
Page 4

income below the FLSA minimum wage requirement, the district court dismissed her claim.  *See id.*[2]  The holding in *Park*, which is squarely on point with this case, is consistent with authority in other jurisdictions and eviscerates DOL's "kickback" theory.

Indeed, under DOL's theory, *any* claim by an employer against an employee (whether for breach of contract, sounding in tort, or for any other dispute between them) would always constitute a kickback because an award in the employer's favor might – if characterized as a deduction from wages – bring that employee below the minimum wage and/or overtime thresholds under the FLSA in a given workweek.  The caselaw and DOL's own regulations do not support such a strained definition of "kickback" and this Court should reject such a dramatic and unwarranted expansion.

* * *

ACS contacted DOL about a briefing schedule with respect to its anticipated motion to dismiss, but DOL declined to agree to a schedule until such time as DOL has an opportunity to review ACS' instant submission.

We will be prepared to address these issues at a pre-motion conference.

Sincerely,

*/s/ David N. Kelley*

David N. Kelley

---

[2]     Of course, here, unlike in *Park*, ACS' employment agreements do not provide for a liquidated damages payment; rather, they allow an arbitrator to assess contractual damages (if any) in accordance with applicable law.