| | | |
|---|---|---|
| **U.S. Department of Labor**<br>**Office of the Solicitor** | 201 Varick Street, Room 983<br>New York, NY 10014 |  |
| Reply to the Attention of: | Jason Glick, Senior Trial Attorney<br>Phone:   (646) 264-3687<br>E-Mail:  glick.jason.e@dol.gov | |

May 26, 2023

**By ECF**
Hon. Nina R. Morrison, U.S. District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Secretary of Labor v. Advanced Care Staffing, LLC et ano.*, No. 23-cv-2119-NRM-MMH

Dear Judge Morrison:

The Acting Secretary of Labor ("Secretary") writes in opposition to Defendants' request (ECF No. 16) for leave to file a motion to dismiss. The Secretary's Complaint (ECF No. 1) pleads with specificity how Advanced Care Staffing, LLC ("ACS") and CEO Sam Klein conditioned employees' receipt of wages each week on the threat that if employees resign before three years, they will face Defendants' demands to kick back wages to satisfy Defendants' future profit stream, and associated attorneys' fees and costs. Defendants' own threats, memorialized in their written contracts and underscored by Defendants' undeniable record of bringing arbitrations against employees, give rise to an actual controversy: Defendants' violation of the Fair Labor Standards Act's requirement to pay wages unconditionally, not subject to threat of future kickbacks to cover costs or business expenses for the employers' benefit.

1. **The Secretary's Complaint Pleads Violations Against Defendants with Factual Specificity.**

There can be no doubt that the Secretary has pleaded sufficient facts regarding how Defendants violated the FLSA. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring "fair notice of what the claim is and the grounds upon which it rests"); *cf* Defs.' Letter 2. For example:

- Defendants' 2022 contract with Vidal warned that ACS intended to recover "loss of anticipated profits" from Vidal if he left prior to the end of a three-year contract term," and that "the prevailing party shall be entitled . . . to be reimbursed for its reasonable attorney's fees as well as the costs and fees charged by the" American Arbitration Association and the arbitrator." Compl. ¶¶ 46, 51.

- Defendants' contract further provided that Vidal "shall reimburse [ACS] for all reasonable costs, including all attorneys' fees that [ACS] incurs in enforcing its rights and remedies." *Id.*

- When Vidal provided notice of his intent to resign, ACS threatened that if Vidal did not reconsider, ACS would initiate an arbitration demanding ACS's future profits upwards of $24,000, plus ACS's arbitration costs and attorneys' fees. *Id.* ¶¶ 58, 62–65.

- ACS filed an arbitration demand against Vidal in July 2022, demanding future profits, attorneys' fees, costs of arbitration, and interest (among other costs). *Id.* ¶¶ 68, 69.

- ACS has entered into substantially similar contracts with numerous other ACS employees, and has followed through on those contracts by demanding other former employees' wages, below the FLSA's protected minimums. *Id.* ¶¶ 53, 79–80.

- Defendants' demands against Vidal in excess of $24,000, for amounts that the FLSA prohibited Defendants from shifting to Vidal, would bring him below the FLSA minimum in his last workweek (during which he worked at least 22.08 hours), and indeed in all workweeks (during which he worked at least 512.51 hours). *Id.* ¶¶ 72, 74–76.

- Defendants' demands would also bring him below the required FLSA overtime rate the week ending April 9, 2022, when he worked 40.75 hours, at an hourly rate of $36, and was paid (and owed) $1,480.50 in gross wages. *Id.* ¶¶ 74, 77.

- Defendants' demands against Vidal and other employees amounted to kickbacks in violation of the FLSA during their last workweeks and/or for their entire period of employment. *Id.* ¶¶ 73–74, 82, 84.

- Defendants' course of conduct against Vidal and other employees violated the FLSA by failing to pay wages free and clear each week. *Id.* ¶ 78, 82, 84.

2. **The Secretary's Complaint States a Justiciable FLSA Claim.**

The FLSA generally requires that employers pay employees at least the federal minimum wage for each hour worked, and one-and-a-half times their regular rate of pay for every hour that they work over forty hours per workweek. *See* 29 U.S.C. §§ 206, 207. Although employers may make lawful deductions from wages for certain expenses such as the "reasonable cost of lodging, board, and other facilities," 29 U.S.C. § 203(m)(1), the FLSA prohibits deductions "primarily for the benefit or convenience of the employer," *Soler v. G. & U. Inc.*, 833 F.2d 1104, 1109 (2d Cir. 1987); 29 C.F.R. § 531.3(d)(1). It is well settled that employers violate the FLSA when they "shift part of [their] business expense" to employees, "to the extent [the arrangement] reduce[s] an employee's wage below the statutory minimum." *Ramos-Barrientos v. Bland*, 661 F.3d 587, 595 (11th Cir. 2011). An employee's FLSA rights cannot "be abridged by contract or otherwise waived because this would nullify the purposes of the statute." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 261 (S.D.N.Y. 2015 (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)). Wages "cannot be considered to have been paid" in conformance with the FLSA unless they are "paid finally and unconditionally or 'free and clear.'" *Id.* (citing 29 C.F.R. § 531.35); *see Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 256–57 (S.D.N.Y. 2008).

Defendants' practice of entering into contracts purporting to require repayment of Defendants' future profits and associated attorneys' fees and costs, and following through on those contracts by initiating arbitrations, squarely violates the FLSA's prohibition on kickbacks and requirement to pay wages free and clear. Contrary to Defendants' parade of horribles, *cf.* Defs.' Letter 4, the Secretary's FLSA claim is consistent with longstanding judicial interpretations of the Act, which prohibits employers from withholding or clawing back wages from non-exempt employees, for amounts that are for the benefit of the employer, such as the "anticipated profits" that Defendants seek from Vidal. Compl. ¶ 46; *see* 29 C.F.R. § 531.33(b) (prohibiting inclusion of a "profit to the employer" in any deduction from wages). For example,

an employer's post-termination attempt to recoup the costs of a training that had primarily benefited the employer violates the FLSA's free and clear requirement and prohibition on kickbacks, insofar as recoupment would reduce the employee's wages below the FLSA minimum. *Ketner v. Branch Banking & Trust Co.*, 143 F. Supp. 3d 370, 383 (M.D.N.C. 2015). Similarly, courts have long recognized that the FLSA prohibits employers from recouping sums from employees for cash register shortages (absent evidence of theft). As a matter of law, employers are required to bear the risk of such "usual losses," and cannot burden employees with such debts by withholding or recouping wages; to hold otherwise would be tantamount to allowing employers to use workers as insurance against ordinary "business expense[s]." *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1198–99 (5th Cir. 1972); *see* Compl. ¶ 5.[1]

The Secretary has also met her "arithmetical" burden at the pleading stage to "allege facts about" an affected employee's wages and working hours. *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015). *Cf.* Defs.' Letter 3. The Complaint pleads that Defendants' demands against Vidal to repay more than $24,000 would bring Vidal below the FLSA minimum wage in his last workweek (for which he was paid $839.04 in gross wages for 22.08 hours of work), and indeed in all workweeks (for which he was paid $20,372.90 in gross wages for 512.51 hours of work). Compl. ¶¶ 72–76. No more detail is required at the pleading stage, as "no complicated mathematical calculation is needed to determine that [an employee was] not paid minimum wage" if Defendants succeed in recouping more than they ever paid in the first instance. *See Brown v. J&W Grading, Inc.*, 390 F. Supp. 3d 337, 355 (D.P.R. 2019). Similarly, the Secretary has sufficiently pleaded the date, hours, and wage rate for a specific overtime workweek, for which Defendants failed to pay Vidal his wages free and clear, and for which Defendants have attempted to recoup Vidal's wages from that week through an impermissible kickback. Compl. ¶¶ 74, 77, 84–86; *see Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (requiring nothing more at the pleading stage for an FLSA Section 7 claim than that a plaintiff "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours").

Defendants also protest that because they have not yet prevailed in their arbitration against Vidal behind closed doors, any harm they have caused him is "conjectural or hypothetical," rather than "concrete and particularized" or "actual." Defs.' Letter 2–3. This argument is meritless, whether considered as an Article III standing or FLSA pleading point. *Ketner* rejected a similar argument by a bank defendant that a plaintiff's injury was merely "speculative" because he had not yet "repaid any" amounts that the bank had put employees on notice of its intention to collect, first through execution of an "cost agreement," and later by sending demand letters. 143 F. Supp. 3d at 376, 383. The bank's "adverse collection activities" and "threat of litigation," even without a legal proceeding against the plaintiff, conferred Article III standing. *Id.* at 383, 385. The Sixth Circuit also recognized a justiciable, well-pleaded FLSA claim in *Stein v. hhgregg, Inc.*, where an employer's written policy provided the "right to demand" repayment for wages after termination. 873 F.3d 523, 530 (6th Cir. 2017). The

---

[1] Defendants point to a single, unpublished case in which a district court summarily determined that an employee's post-termination payment to an employer was not a prohibited kickback. The decision appears to rest on the Court's finding that the employer was recouping costs previously incurred primarily for the worker's benefit, rather than the employer's benefit. *Park v. FDM Grp. (Holdings) PLC*, No. 16-cv-1520, 2017 WL 946298, at *3–4 (S.D.N.Y. Mar. 9, 2017).

defendants sought to escape FLSA liability on the ground that they had not yet collected any debts, and disclaimed any future intention to collect. *Id.* at 534–35. The Sixth Circuit reversed, explaining that the FLSA "free and clear" violation occurred where the employer's "actual written policy" "purport[ted] to hold employees liable" for the return of wages, even without steps to collect. *See id.* at 535 ("Incurring a debt, or even *believing* that one has incurred a debt, has far-reaching practical implications for individuals."); *accord Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 95 (2d Cir. 2023) (considering "practical likelihood" of future litigation, based in part on "mere threat of future litigation," in determining justiciability). Here, not only do Defendants admit that they require employees to enter into contracts purporting to require repayment of wages to cover Defendants' future profits; Defendants also threatened Vidal with an arbitration, before initiating an actual proceeding to recoup those profits and associated fees and costs. Compl. ¶¶ 46, 51, 53 58, 62–65, 68–69; *see id.* ¶¶ 79–80 (contracts and demands against other employees). The Secretary's Complaint plainly pleads justiciable FLSA claims.

   For the foregoing reasons, the Court should deny Defendants' request to file a Rule 12 motion. If the Court were to grant Defendants leave to proceed with full briefing, the parties jointly propose that Defendants would have four weeks thereafter to serve their Rule 12(b) motion and supporting papers; the Secretary would have four weeks to respond, and Defendants would have two weeks to serve any reply.

Respectfully submitted,

Jeffrey S. Rogoff
Regional Solicitor

By:  /s/ Jason Glick
   Jason Glick
   Senior Trial Attorney

cc:  Defendants' Counsel of Record (via ECF)