UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JULIE A. SU,<br>Acting Secretary of Labor,<br>United States Department of Labor,<br><br>_Plaintiff_,<br><br>v.<br><br>ADVANCED CARE STAFFING, LLC,<br>PRIORITY CARE STAFFING, LLC, and<br>SAMUEL KLEIN, an individual,<br><br>_Defendants._ | Case No. 23-cv-2119 (NRM/MMH) |

**DOL'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

SEEMA NANDA
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

JASON E. GLICK
ALEXANDER M. KONDO
Senior Trial Attorneys

U.S. Department of Labor
Office of the Solicitor
201 Varick Street, Room 983
New York, NY 10014

_Attorneys for Plaintiff_
_Acting Secretary of Labor_

Date of Service: September 14, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ............................................................................................................................ 4

I.     DOL has standing to enforce the FLSA, including to pursue damages and declaratory and injunctive relief. ........................................................................................................... 4

        A. DOL has standing as the executive branch agency with express statutory authority to enforce the FLSA. .................................................................................................. 4

        B. Defendants' past and ongoing demands for kickbacks against employees such as Vidal and Miclat, threats against hundreds of other employees who remain subject to Defendants' contracts, and actual clawbacks from employees, also establish DOL's Article III standing to pursue damages. ..................................................................... 5

        C. DOL also has standing to pursue equitable and declaratory relief. ......................... 9

II.    DOL's Complaint pleads Defendants' FLSA violations with specificity. ...................... 12

III.   Defendants cannot hide from their own written demands that employees kick back wages specifically to cover Defendants' future profits. Such demands violate the FLSA. ......... 17

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
  57 F.4th 85 (2d Cir. 2023) ................................................................................... 11

*Arista Records, LLC v. Doe*,
  604 F.3d 110 (2d Cir. 2010) ..................................................................................... 7

*Arriaga v. Fla. Pac. Farms, LLC*,
  305 F.3d 1228 (11th Cir. 2002) ................................................................. 18, 19, 20

*Attias v. Carefirst, Inc.*,
  865 F.3d 620 (D.C. Cir. 2017) .................................................................................. 6

*Black v. Chittenden*,
  69 N.Y.2d 665 (1986) ............................................................................................. 22

*Bland v. Edward D. Jones & Co.*,
  375 F. Supp. 3d 962 (N.D. Ill. 2019)................................................... 15, 20, 21, 22

*Brock v. Big Bear Market No. 3*,
  825 F.2d 1381 (9th Cir. 1987) .................................................................................. 9

*Brooklyn Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945) ............................................................................................... 23

*Brown v. J&W Grading, Inc.*,
  390 F. Supp. 3d 37 (D.P.R. 2019) .......................................................................... 13

*Calcano v. Swarovski N. Am. Ltd.*,
  36 F. 4th 68 (2d Cir. 2022) .................................................................................... 11

*Carmen v. Health Carousel, LLC*,
  No. 20-cv-313, 2023 WL 5104066 (S.D. Ohio Aug. 9, 2023) .......................... *passim*

*CFPB v. Gordon*,
  819 F.3d 1179 (9th Cir. 2016) .................................................................................. 5

*Cheeks v. Freeport Pancake House, Inc.*,
  796 F.3d 199 (2d Cir. 2015) ................................................................................... 23

*Chime v. Peak Security Plus, Inc.*,
  137 F. Supp. 3d 183 (E.D.N.Y. 2015) .................................................................... 14

*Chung v. Igloo Prods.*,
  No. 20-cv-4926, 2022 WL 2657350 (E.D.N.Y. July 8, 2022) ................................ 11

*Dearth v. Holder*,
  641 F.3d 499 (D.C. Cir. 2011)........................................................................... 10, 11

*DeJesus v. HF Mgmt. Servs., LLC*,
  726 F.3d 85 (2d Cir. 2013) ..................................................................................... 15

*Dieffenbach v. Barnes & Noble, Inc.*,
  887 F.3d 826 (7th Cir. 2018) ............................................................................ 16, 23

*Frye v. Anadarko Petrol. Corp.*,
  953 F.3d 285 (5th Cir. 2019)..................................................................................... 8

*FTC v. Kochava Inc.*,
  No. 22-cv-377, 2023 WL 3249809 (D. Idaho May 4, 2023)................................... 10

*FTC v. Roomster Corp.*,
    --- F. Supp. 3d ---, No. 22-cv-7389, 2023 WL 1438718 (S.D.N.Y. Feb. 1, 2023).............. 10, 11

*Gordon v. City of Oakland*,
    627 F.3d 1092 (9th Cir. 2010) ................................................................................... 21

*Hart v. RCI Hosp. Holdings, Inc.*,
    90 F. Supp. 3d 250 (S.D.N.Y. 2015) .......................................................................... 2

*Heder v. City of Two Rivers*,
    295 F.3d 777 (7th Cir. 2002) ............................................................................. 20, 22

*Heuberger v. Smith*,
    No. 16-cv-386, 2017 WL 3923271 (N.D. Ind. Sept. 7, 2017).................................... 15

*Howard v. City of Springfield*,
    274 F.3d 1141 (7th Cir. 2001) ................................................................................... 9

*Ketner v. Branch Banking & Trust Co.*,
    143 F. Supp. 3d 370 (M.D.N.C. 2015) .................................................. 8, 11, 21, 22

*Lopez-Serrano v. Rockmore*,
    132 F. Supp. 3d 390 (E.D.N.Y. 2015) ....................................................................... 12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................. 5

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013) .................................................................................... 15

*Lynch v. City of N.Y.*,
    952 F.3d 67 (2d Cir. 2020) ...................................................................................... 17

*Marcial v. New Hudson Family Rest.*,
    No. 18-cv-663, 2019 WL 1900336 (S.D.N.Y. Apr. 29, 2019) ................................... 15

*Mayhue's Super Liquor Stores, Inc. v. Hodgson*,
    464 F.2d 1196 (5th Cir. 1972) ................................................................................. 20

*McClain v. Cape Air*,
    No. 22-cv-10649, 2023 WL 3587284 (D. Mass. May 22, 2023) ............................... 22

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ............................................................................................ 8, 11

*Milford v. Roehl Transp.*,
    No. 22-cv-879, 2023 WL 2503495 (E.D. Wis. Mar. 14, 2023).................... 20, 21, 22

*Mitchell v. Robert de Mario Jewelry, Inc.*,
    361 U.S. 288 (1960) ............................................................................................. 5, 9

*Nakahata v. N.Y.-Presb. Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013) .................................................................................... 12

*Park v. FDM Grp. (Holdings) PLC*,
    No. 16-cv-1520, 2017 WL 946298 (S.D.N.Y. Mar. 9, 2017) ...................... 20, 21, 22

*Powell v. McCormack*,
    395 U.S. 486 (1969) ................................................................................................ 11

*Ramos-Barrientos v. Bland*,
    661 F.3d 587 (11th Cir. 2011) ................................................................................. 18

*Rivera v. Peri & Sons Farms, Inc.*,
    735 F.3d 892 (9th Cir. 2013) ................................................................................... 18

*Soler v. G. & U. Inc.*,
    833 F.2d 1104 (2d Cir. 1987) ............................................................ 2, 17, 18
*Solis v. SCA Rest. Corp.*,
    938 F. Supp. 2d 380 (E.D.N.Y. 2013) .......................................................... 9
*Stein v. hhgregg, Inc.*,
    873 F.3d 523 (6th Cir. 2017) ........................................................... *passim*
*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
    425 F.3d 119 (2d Cir. 2005) ................................................................ 16
*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..................................................................... 6, 7
*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..................................................................... 5
*Tweed-New Haven Airport Auth'y v. Tong*,
    930 F.3d 65 (2d Cir. 2019) .................................................................. 7
*Vitagliano v. Cnty. of Westchester*,
    71 F.4th 130 (2d Cir. 2023) ................................................................. 8
*Walsh v. Lajala*,
    565 F. Supp. 3d 766 (E.D.N.C. 2021) ........................................................ 15

**Statutes**

29 U.S.C. § 203(m)(1) ...................................................................... 18
29 U.S.C. § 206(a)(1)(C) ............................................................... 13, 14
29 U.S.C. § 207 ....................................................................... 14, 15
29 U.S.C. § 211(a) ...................................................................... 5, 9
29 U.S.C. § 216(c) ...................................................................... 3, 5
29 U.S.C. § 217 .................................................................. 3, 5, 9, 10

**Regulations**

20 C.F.R. § 656.12(b) ..................................................................... 24
29 C.F.R. § 531.3 .................................................................. 2, 18, 22
29 C.F.R. § 531.33 ................................................................... 18, 22
29 C.F.R. § 531.35 .............................................................. 2, 12, 18
29 C.F.R. § 778.104 ...................................................................... 14
29 C.F.R. § 778.110 ...................................................................... 14
29 C.F.R. § 778.315 ...................................................................... 14

**Rules**

Fed. R. Civ. P. 8 ............................................................ 12, 16, 17, 22

**Other Authorities**

U.S. Dep't of Labor, Final Rule, Labor Certification for the Permanent Employment of [Foreign Nationals] in the United States; Reducing the Incentives and Opportunities for Fraud and Abuse and Enhancing Program Integrity, 72 Fed. Reg. 27,904 (May 17, 2007) ...................... 24

## PRELIMINARY STATEMENT

DOL's Complaint pleads with specificity how Defendants Advanced Care Staffing, LLC ("ACS"), Priority Care Staffing, LLC ("PCS"), and Samuel Klein have conditioned employees' receipt of wages each week on an ongoing threat: if employees resign before three years, they must kick back their earned wages to satisfy Defendants' future profit stream. Defendants also warn employees that if they refuse to comply, employees will be responsible for satisfying Defendants' own attorneys' fees and costs incurred in arbitrations to enforce Defendants' demands. Defendants' threats to claw back employees' wages, memorialized in written contracts and underscored by Defendants' actual record of obtaining the return of wages and bringing arbitrations against employees who resist, give rise to an actual controversy: Defendants have violated, and continue to violate, the Fair Labor Standards Act ("FLSA" or "the Act") and its requirement that employers pay wages unconditionally, not subject to future demands to kickback those wages to cover employers' anticipated operating costs or future profits.

Simply put, Defendants' FLSA violation is their scheme to recoup employees' wages to satisfy Defendants' future profits and associated fees and costs.[1] In pleading the violation with specificity, DOL's Complaint relies on the language of Defendants' contracts, demand letters, and actual arbitration petitions filed against employees. Defendants' demands all emphasize, over and over, that to satisfy their future anticipated profits, they will recoup employees' wages.

---

[1] *E.g.*, Amend. Compl. (ECF No. 19) ("Compl.") ¶ 11 ("The Secretary brings this action to enjoin Defendants from their unlawful conduct demanding future profits and related attorneys' fees and costs"); *see id.* ¶ 2 ("improper[] demand . . . measured by the amount of future profits"), ¶ 4 ("all to satisfy ACS's claim of future profits"), ¶ 6 ("PCS's claim of future profits"), ¶ 8 (FLSA does not permit "employer to treat workers as insurance for lost profits"), ¶¶ 168, 171 (Causes of Action describing Defendants' illegal demands that employees pay "anticipated future profits" and associated fees and costs); *see also* ECF No. 17, at 1 (DOL's letter response to Defendants' pre-motion conference request, summarizing our claim as arising from Defendants' "demands to kick back wages to satisfy Defendants' future profit stream, and associated attorneys' fees and costs").

Defendants' framing of their own damages in terms of their future profits is the smoking gun establishing that Defendants seek "illicit recoveries." *See Carmen v. Health Carousel, LLC*, No. 20-cv-313, 2023 WL 5104066, at *14 (S.D. Ohio Aug. 9, 2023) (examining the category of damages an employer claims in a breach of contract action to determine where the employer has violated the FLSA). Now in their motion, Defendants have all but abandoned mention that they demand the return of employees' wages specifically to satisfy future profits. *See generally* Defs.' Mem (mentioning the word "profit" only once, to deny a well-pleaded allegation). It is little surprise then that Defendants' brief misses the mark entirely, attempting to dismiss a phantom complaint, rather than confronting DOL's actual allegations.

Defendants' demands to recoup employees' wages to satisfy future profits are plainly illegal. The FLSA prohibits employers from shifting to employees costs that are "primarily for the benefit or convenience of the employer," and from using contracts to abridge or obtain waiver of employees' FLSA rights. *Soler v. G. & U. Inc.*, 833 F.2d 1104, 1109 (2d Cir. 1987); *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 261 (S.D.N.Y. 2015); 29 C.F.R. § 531.3(d)(1). When employers attempt to shift such costs to employees, they engage in prohibited "kickbacks," depriving employees of their wages "free and clear." 29 C.F.R. § 531.35. A written policy that threatens to require such kickbacks upon termination gives rise to a FLSA violation even where a defendant has not yet clawed back sums (and Defendants have, *see* Compl. ¶¶ 5, 7, 113, 166). *Stein v. hhgregg, Inc.*, 873 F.3d 523, 534–35 (6th Cir. 2017).

Given Defendants' record of threats and demands, actual clawbacks of wages from employees, and ongoing attempts to clawback wages through at least two arbitrations, there can be no question that DOL has Article III standing to pursue its FLSA claims, including its requests for declaratory and injunctive relief. DOL's Complaint also meets all applicable pleading

requirements, and the FLSA claims are consistent with a wealth of authorities defining the clear line marking when employers are prohibited from shifting costs to employees. Because Defendants have crossed that line, they are not entitled to dismissal.

## BACKGROUND

DOL sued Defendants pursuant to 29 U.S.C. §§ 216(c) and 217, seeking declaratory and injunctive relief, and the recovery of wages and liquidated damages owed to Defendants' affected employees. Defendants' FLSA violations arise from their contracts seeking to hold employees liable upon resignation for Defendants' future profits, and from Defendants' practice of enforcing those contracts to actually obtain the return of employees' wages.[2] Employees who have defied Defendants' demands to claw back wages have been dragged by Defendants and their attorneys into arbitrations to enforce those demands. DOL's Complaint identifies as illustrative examples the circumstances of two employees who have faced consequences for not acceding to Defendants' threats.

Based on a good-faith belief that he could not continue to work under conditions inconsistent with his ethical and professional responsibilities, Benzor Shem Vidal gave notice of his intent to resign from ACS in June 2022. Compl. ¶¶ 89–92. ACS promptly responded by threatening Vidal that if he did not reconsider, ACS would initiate an arbitration to demand ACS's future profits, plus associated arbitration costs and attorneys' fees. *Id.* ¶¶ 93–98. Within weeks, ACS made good on its threat by filing an arbitration demand against Vidal before the American Arbitration Association ("AAA"). *Id.* ¶¶ 101–02. ACS's demands for future profits of more than

---

[2] Defendants' motion does not seek relief on a defendant-by-defendant basis. Accordingly, this brief generally discusses the similar violations by all Defendants interchangeably, except for slight variations in Defendants' conduct directed at Benzor Shem Vidal and Cherry Lyn Miclat. *See also* Compl. ¶¶ 64–70 (Defendants' shared operations and identical contracts).

$24,000, not including Defendants' attorneys' fees and costs, exceed all the gross wages ACS ever paid Vidal ($20,372.90), and would bring him below the FLSA's protected minimums in specific workweeks, as well as his entire period of employment. *Id.* ¶¶ 95–99, 105–11.

Like Vidal, Cherry Lyn Miclat resigned out of concern for her professional license and ethical responsibilities, after PCS and her assigned facility failed to address her complaints regarding an unreasonable patient load and inadequate support and training. *Id.* ¶¶ 141–54. In response, in December 2022, PCS initiated an arbitration demand before the AAA against Miclat, similarly seeking future profits, attorneys' fees, and the costs of arbitration. *Id.* ¶¶ 155–58. PCS's demands against Miclat exceed the minimum amounts protected by the FLSA in Miclat's final workweek, and each week she worked overtime. *Id.* ¶¶ 159–64.

Defendants employ hundreds of other healthcare employees at any given time, many of whom remain subject to substantially similar contracts as Vidal's and Miclat's. *Id.* ¶¶ 51, 86, 112, 138, 165; *see also* ECF No. 16, at 1 (ACS and Klein's letter to the Court referring to "hundreds" of employees and describing common contract terms). Defendants have made good on the threats in the contracts and actually succeeded in clawing back former employees' wages, bringing certain employees' compensation below the levels protected by the FLSA. Compl. ¶¶ 5, 7, 113, 166.

## ARGUMENT

I.   **DOL has standing to enforce the FLSA, including to pursue damages and declaratory and injunctive relief.**

   A.  **DOL has standing as the executive branch agency with express statutory authority to enforce the FLSA.**

As a threshold matter, Defendants' standing arguments fail for the fundamental reason that "the Executive Branch . . . need not suffer a 'particularized injury'" to bring suit, where, as here, DOL "is charged under Article II to enforce federal law." *CFPB v. Gordon*, 819 F.3d 1179, 1187

(9th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206 n.1, 2207 (2021) (describing the "injury in fact" requirement for "'citizen suit' causes of action for private plaintiffs" as partly to protect the Executive Branch's separate "Article II authority"). The FLSA expressly grants DOL the authority to pursue litigation to obtain back wages and liquidated damages on behalf of employees. 29 U.S.C. § 216(c). Congress also empowered DOL with exclusive authority to seek injunctive relief to enforce the Act. *Id.* §§ 211(a), 217; *see Mitchell v. Robert de Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960) (describing the central role of DOL's Section 217 authority in effective FLSA enforcement). In short, as a federal agency empowered by Congress with enforcing the FLSA, DOL is "excepted from the generalized grievance prohibition that private parties face under Article III." *CFPB*, 819 F.3d at 1187 (rejecting standing challenge to federal agency's suit that sought injunctive relief and damages that would be distributed to private parties). DOL's exercise of its authority as a federal agency to pursue relief pursuant to Sections 16(c) and 17 suffices to deny Defendants' motion on standing grounds. *Cf.* Defs.' Mem. 9–14.

> **B. Defendants' past and ongoing demands for kickbacks against employees such as Vidal and Miclat, threats against hundreds of other employees who remain subject to Defendants' contracts, and actual clawbacks from employees, also establish DOL's Article III standing to pursue damages.**

DOL's standing is also independently satisfied under the standing doctrines more generally applicable to private plaintiffs (assuming such doctrines apply to an Executive Department's suit to enforce a statute).[3] There is simply no merit to Defendants' contention that their ongoing FLSA violations are somehow so hypothetical as to warrant dismissal on constitutional standing grounds.

---

[3] As Defendants acknowledge, DOL's suit seeks back wages and liquidated damages on behalf of affected former employes, including Miclat and Vidal, and particularized harm suffered by any employees is sufficient to establish Article III standing. Defs.' Mem. 2 n.1.

*Cf.* Defs.' Mem. 9–14. Defendants principally protest that because they have not yet prevailed in the ongoing arbitrations to claw back Vidal's and Miclat's wages, injury to those two employees is somehow "conjectural." *Id.* at 9–12. Defendants also ask this Court to disregard DOL's well-pleaded allegations that hundreds of Defendants' employees receive their wages each week subject to an illegal proviso that they must remain in Defendants' service to keep their wages free and clear, and that Defendants have succeeded in recouping yet other employees' wages. *Id.* at 13.

Defendants cannot simply wish away all the concrete and illegal actions they have taken to threaten their employees with kickbacks, to obtain the actual clawback of wages for prohibited costs, and to pursue ongoing legal action against other employees. Article III's injury-in-fact requirement is satisfied, as here, when there is a "substantial risk" that employees will suffer Defendants' "threatened injury." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017) (collecting cases assessing Article III standing under the "substantial risk" framework).[4] DOL's Complaint pleads with specificity how Defendants have subjected their former and current employees to an actual, substantial risk of being compelled to turn over their FLSA-protected wages, including in ongoing arbitrations against Vidal and Miclat, where Defendants have started to run up the bill for attorney' fees and costs, amounts that Defendants have also threatened to shift to the respondent employees. Compl. ¶¶ 79–85, 95–111, 131–36, 155–64.

Injury-in-fact is also independently established because when certain employees have departed, Defendants have acted on the threats in their contracts and actually succeeded in clawing

---

[4] Defendants do not advance any argument regarding any aspect of standing apart from injury-in-fact. There can also be no question that the FLSA violations are caused by Defendants and would be redressed by a combination of declaratory and injunctive relief, and an award of back wages and liquidated damages.

back former employees' wages, bringing employees' compensation below the levels protected by the FLSA.[5] Compl. ¶¶ 5, 7, 86, 112–13, 165–66. Defendants' scheme subjects their current and former employees to a substantial risk of incurring actual damages in the form of wages unlawfully kicked back to Defendants, among other concrete burdens, such as incurring costs to try to prevent the harm. *E.g., Susan B. Anthony List*, 573 U.S. at 165 (recognizing that Article III injury may also include being "forced to divert significant time and resources to hire legal counsel and respond to discovery requests").

Defendants devote much effort to downplaying the ongoing arbitrations they have already initiated to claw back tens of thousands of dollars from Vidal, and a comparable demand against Miclat. They argue that there is somehow no "substantial risk" that either Vidal or Miclat will suffer harm or damages even if the Second Circuit permits the arbitrations to resume,[6] because Defendants will still have to prove liability and damages, and there could be enforcement proceedings following any arbitral award in Defendants' favor. Defs.' Mem. 11–12. Defendants'

---

[5] At this stage, and without the benefit of discovery, DOL's allegations regarding these additional employees are sufficiently pleaded, especially in connection with more specific allegations regarding Vidal and Miclat, and Defendants' acknowledgment that they entered into similar contracts with numerous other employees. *See Arista Records, LLC v. Doe*, 604 F.3d 110, 121 (2d Cir. 2010) (crediting allegations pleaded on "information and belief" "where the [details of the] facts are peculiarly" within a defendant's knowledge). Defendants' protest otherwise is unsupported by argument. *Cf.* Defs.' Mem. 6.

[6] This Court may take judicial notice of the fact that ACS has sought relief from the Second Circuit allowing the arbitration against Vidal to proceed "unimpeded" by this Court's preliminary injunction, Br. of Def.-Appellant, ECF No. 48, at 50, *Vidal v. Advanced Care Staffing, LLC*, No. 23-303 (2d Cir. brief filed July 5, 2023), and of PCS's representation to this Court that PCS consented to stay the arbitration against Miclat only pending ACS's Second Circuit appeal, *see* Defs.' Reply Mem., ECF No. 30, *Miclat v. Advanced Care Staffing, LLC*, No. 23-cv-5296 (E.D.N.Y. brief filed Sept. 11, 2023). Given Defendants' "diligent efforts" to lift the stays of those arbitrations, those stays have no effect on the standing analysis. *E.g., Tweed-New Haven Airport Auth'y v. Tong*, 930 F.3d 65, 72 (2d Cir. 2019).

arguments are inconsistent with standing jurisprudence, which recognizes that no final judgment is required when a pending (or threatened litigation) is what makes an Article III injury sufficiently concrete. For example, when a party's standing arises from a credible threat of a future prosecution, standing is not diminished merely because a prosecutor still has discretion whether to bring suit, must still meet its burden in any case that may be brought, and may face post-judgment appeals. *E.g.*, *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 140 & n.5 (2d Cir. 2023) (collecting cases). Similarly, when a private party is threatened with civil litigation by another private party, such threats alone may suffice to establish standing. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 130 (2007); *e.g.*, *Frye v. Anadarko Petrol. Corp.*, 953 F.3d 285, 294–95 (5th Cir. 2019) (rejecting argument that "multiple contingencies . . . rendered" the possibility of litigation too remote to establish standing, given an actual "threat of litigation").

Indeed, attempts to dismiss an FLSA action on standing grounds have been rejected where the injury is less concrete than here. In *Ketner v. Branch Banking & Trust Co.*, the court rejected an employer's attempt to obtain dismissal of an FLSA case even where — unlike Defendants' ongoing proceedings against Vidal and Miclat, or the instances where Defendants have succeed in clawing back wages from other former employees — the employer had not initiated any proceeding to recoup wages, but merely sent demand letters. 143 F. Supp. 3d 370 (M.D.N.C. 2015). The bank employer sought to recoup the costs of a training from an employee who challenged the bank's attempt as a kickback prohibited by the FLSA, and before the employee actually repaid any of the costs. The bank had put employees on notice of its intent to collect the training costs, first through execution of a cost agreement, and later by sending demand letters, but never initiated a legal proceeding. *Id.* at 376, 383. The court correctly rejected the bank's argument that the employee's injury was "speculative," concluding that the bank's "adverse collection

8

activities" and "threat of litigation," even without a pending legal proceeding, meant the employee had Article III standing to pursue his kickback claim. *Id.* at 383, 385; *see also Stein v. hhgregg, Inc.*, 873 F.3d 523, 530, 534–35 (6th Cir. 2017) (describing the "far-reaching practical implications" for employees of navigating "job applications, credit applications, court documents, or other financial records that require self-reporting of existing liabilities," under the cloud of a former employer's threats that a debt remains outstanding).

**C. DOL also has standing to pursue equitable and declaratory relief.**

DOL has also met its burden at the pleading stage to identify facts that support DOL's standing to pursue equitable and declaratory relief. To argue otherwise, Defendants protest that DOL must show a "real and immediate threat of repeated injury" to establish Article III standing to seek such relief. *Cf.* Defs.' Mem. 13 (citing two cases regarding private plaintiffs' complaints). For the same reasons set forth concisely in Section I.A, this Article III standard does not apply to DOL as a government plaintiff. *See also Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987) ("in exercising its discretion" whether to grant DOL's request for an FLSA injunction, a "court must give substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private, right"). Even assuming that DOL must meet the same Article III standard as a private plaintiff seeking injunctive relief, DOL's Complaint easily satisfies such a standard.

DOL seeks injunctive relief pursuant to 29 U.S.C. § 217, which vests sole authority in DOL to seek relief to restrain violations of the Act. *E.g.*, *Howard v. City of Springfield*, 274 F.3d 1141, 1145 (7th Cir. 2001); *see* 29 U.S.C. § 211(a). "Prospective [FLSA] injunctions are essential because the cost of noncompliance is placed on the employer, which lessens the responsibility of the [DOL] in investigating instances of noncompliance." *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 404 (E.D.N.Y. 2013) (Bianco, J.); *see Mitchell v. Robert de Mario Jewelry, Inc.*, 361 U.S.

9

288, 292 (1960) (describing the central role of DOL's Section 217 authority in effective FLSA enforcement).

DOL's allegations regarding Defendants' past and ongoing conduct establish the requisite injury that will warrant a permanent injunction to restrain Defendants' unlawful scheme. The Complaint sufficiently pleads how Defendants still "have a policy and practice of entering into contracts with employees with identical or substantially similar contract provisions" to those entered into with Miclat and Vidal — contracts that warn employees that Defendants intend to recover "loss of anticipated profits" if employees leave before three years, in addition to attorneys' fees and costs associated with Defendants enforcing that demand.[7] Compl. ¶¶ 86, 112, 138, 165. Employees subject to these contracts do not receive payment of their wages free and clear until they remain in the service of Defendants for the full three-year term: an ongoing FLSA violation each workweek. Compl. ¶¶ 1, 111, 164, 168, 171. DOL's allegations regarding Defendants' pattern and practice of actually clawing back wages from former employees, taking concrete steps against Vidal and Miclat to force them through arbitrations to kick back wages, and keeping in place the same contracts for hundreds of other employees, are wholly sufficient to establish that Defendants have committed FLSA violations, and that those violations are actually ongoing. *E.g.*, *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) ("ongoing injury" confers Article III standing to seek

---

[7] Defendants bizarrely observe that DOL has not alleged that Defendants' violations "will continue," Defs.' Mem. 13, as if DOL could allege future misconduct with specificity, as opposed to what the Complaint does: alleging past and present facts that give rise to a sufficient likelihood of future violations. DOL's complaint appropriately uses a combination of the present and present perfect tenses to describe "a continuing situation" *E.g.*, *FTC v. Kochava Inc.*, No. 22-cv-377, 2023 WL 3249809, at *3 (D. Idaho May 4, 2023); *FTC v. Roomster Corp.*, --- F. Supp. 3d ---, No. 22-cv-7389, 2023 WL 1438718, at *5 (S.D.N.Y. Feb. 1, 2023) (permitting injunctive claim). Defendants also do not represent that they have discontinued their violative practices, let alone permanently, or with the requisite commitment that could possibly suffice to meet their burden to raise any mootness question.

injunctive relief); *Roomster Corp.*, --- F. Supp. 3d ---, 2023 WL 1438718, at *5 (FTC's complaint sufficiently alleged ongoing violations to support a claim for prospective injunctive relief where its allegations, as here, were written in a combination of "the present and present perfect tenses").[8]

Because a declaration can "be used as a predicate to further relief, including an injunction," it follows from DOL's standing to seek injunctive relief that DOL also has standing to seek declaratory relief. *Powell v. McCormack*, 395 U.S. 486, 499 (1969); *Dearth*, 641 F.3d at 501 ("ongoing injury" confers Article III standing to seek declaratory relief); *see Ketner*, 143 F. Supp. 3d at 385 (explaining that allowing a declaratory claim to proceed "may put an end to the uncertainty, insecurity, and the controversy involving the validity and enforcement" of a contract alleged to violate the FLSA). DOL has standing to pursue declaratory relief for the additional reasons that Defendants' policy of entering into the offending contracts with hundreds of employees, together with Defendants' actual clawbacks and ongoing arbitrations, creates an ongoing threat against current employees of future demands for kickbacks. It is well established that such threats of future enforcement confer standing to seek declaratory relief. *E.g.*, *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 95 (2d Cir. 2023); *MedImmune, Inc.*, 549 U.S. at 130.

DOL's Complaint appropriately seeks damages, equitable, and declaratory relief, and there is no basis to dismiss DOL's prayer for any such remedies, let alone at the pleading stage.

---

[8] Defendants' cases regarding prospective injunctive relief bear no resemblance to DOL's authority to seek an injunction in the public interest, including based on past and ongoing injury to various employees. *See* Defs.' Mem. 13. In *Chung v. Igloo Products* was a consumer case where the plaintiffs would never buy the defective product again. No. 20-cv-4926, 2022 WL 2657350, at *4 (E.D.N.Y. July 8, 2022). *Calcano v. Swarovski N. Am. Ltd.* involved a "Mad-Libs-style" complaint with implausible allegations that a plaintiff would return to a store that never existed, sought to return to "Banana Republic for its food," and intended to purchase a product that the defendant had never sold. 36 F. 4th 68, 74–78 (2d Cir. 2022).

## II.    DOL's Complaint pleads Defendants' FLSA violations with specificity.

DOL's Complaint easily exceeds Rule 8's pleading standard, extensively detailing how Defendants' course of conduct has violated the FLSA, including examples of affected employees' wages and hours in certain workweeks. *See Nakahata v. N.Y.-Presb. Healthcare Sys., Inc.*, 723 F.3d 192, 197, 201 n.10 (2d Cir. 2013) (discussing "case-specific" approach to assessing FLSA pleadings); *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015); *cf.* Defs.' Mem. 14–17.

Defendants generally contend that DOL has not stated an FLSA claim with specificity, because despite Defendants' best efforts, they have not yet succeeded in clawing back a specific amount of Vidal's or Miclat's wages. The Sixth Circuit has correctly rejected such an argument, holding that employees properly pleaded an FLSA claim where a retail employer had not yet even taken specific steps to collect against employees, but had a written policy that purported to hold employees liable for the return of wages after their termination. *Stein v. hhgregg, Inc.*, 873 F.3d 523, 530, 534–35 (6th Cir. 2017). The Sixth Circuit appropriately held that such a policy violated the FLSA including the "free and clear" regulation, 29 C.F.R. § 531.35, insofar as the policy called for the return of wages below the FLSA minimum wage of $290 in a 40-hour workweek. 873 F.3d at 535. Defendants here have gone further, sending Vidal a demand letter and actually initiating arbitrations against both Vidal and Miclat, which remain pending subject to a stay that Defendants are actively seeking to lift, and in which proceedings Defendants have incurred specific costs and fees that they intend to shift to employees.

DOL's Complaint also pleads all the facts required under the Second Circuit's FLSA pleading standard, regarding employees' wages and hours. *E.g.*, *Nakahata*, 723 F.3d 192. The Complaint pleads with specificity an example of ACS and Klein's violation of the FLSA's

minimum wage provision: their demands, including a letter dated June 22, 2022, that Vidal repay several thousands of dollars of his wages toward Defendants' future profits and associated attorneys' fees and costs. Compl. ¶¶ 95–99, 101–04. The following workweek — Vidal's last — Defendants provisionally paid Vidal $839.04 in gross wages for 22.08 hours of work, *id.* ¶ 105, subject to their demands that he repay Defendants at least $24,000, plus attorney's fees, costs, and interest. When Vidal did not accede to their demands, ACS promptly initiated an arbitration on July 8 to recoup Vidal's wages for costs that the FLSA does not permit an employer to shift to employees. Compl. ¶¶ 4, 96–99, 101–04, 106, 111, 168.

Given ACS's specific monetary demands against Vidal, "no complicated mathematical calculation is needed to determine that" the demands for several thousand dollars far exceeded the $839.04 provisionally paid to Vidal in his last workweek (for 22.08 hours of work) and violated the FLSA's minimum wage and "free and clear" requirement in his last workweek. *See Brown v. J&W Grading, Inc.*, 390 F. Supp. 3d 37, 355 (D.P.R. 2019); *Stein*, 873 F.3d at 535; 29 U.S.C. § 206(a)(1)(C).

DOL's Complaint also pleads in detail how PCS and Klein have violated the FLSA's minimum wage provisions by demanding that Miclat return her wages to cover PCS's future profits, attorneys' fees, costs of arbitration, and interest. Compl. ¶¶ 155–58 ($2,200 arbitration filing fee, hourly arbitrator fees of $475 to $875, and PCS's demand for more than two years of future profits). Given the magnitude of those costs, and considered alongside the quantity of future profits ACS and Klein have demanded from Vidal, DOL's Complaint sufficiently alleges that PCS's demands far exceed the $1,385.10 in gross wages (for 36.45 hours of work) provisionally

paid to Miclat in her last workweek, thereby violating the FLSA's minimum wage and "free and clear" requirement. Compl. ¶¶ 6, 160, 168.[9]

These well-pleaded allegations regarding Defendants' conduct directed at Vidal and Miclat in "a particular week" are sufficient for the Court to deny Defendants' motion as to all Defendants. *See Chime v. Peak Security Plus, Inc.*, 137 F. Supp. 3d 183, 196 (E.D.N.Y. 2015) (discussing how an FLSA violation need only be pleaded for a single workweek). And DOL has pleaded yet more with respect to ACS and Klein's minimum wage violation: that ACS's ongoing demands impermissibly seek to recoup more from Vidal (upwards of $24,000) than the gross wages recorded on his payroll for his entire period of employment with Defendants ($20,372.90), for amounts that the FLSA requires the employers to bear. Compl. ¶¶ 107–09; 29 U.S.C. § 206(a)(1)(C).

DOL's Complaint also specifically pleads multiple examples of Defendants' violation of the FLSA's overtime provision, 29 U.S.C. § 207. For the week ending April 9, 2022, when Vidal worked 40.75 hours, at a regular hourly rate of $36 (before overtime premiums), ACS paid Vidal $1,480.50 in gross wages. Compl. ¶ 110. Defendants' demand that Vidal kick back wages corresponding to such an overtime workweek deprives Vidal of his right to keep the amount guaranteed by the FLSA for his overtime hours, free and clear ($54/hour in premium pay for his hours over 40). *Id.* ¶ 171; *see* 29 U.S.C. § 207(a)(1); 29 C.F.R. §§ 778.104, 778.110, 778.315. As for Miclat, the Complaint pleads with specificity the details of her gross wages, hourly rate, and hours worked in three example overtime workweeks, during which Defendants' demands and

---

[9] Because DOL has specifically pleaded PCS and Klein's violation with respect to Miclat "during a particular week," *Peak Security Plus, Inc.*, 137 F. Supp. 3d 183, 196 (E.D.N.Y. 2015), it does not matter that DOL's Complaint does not also specify Miclat's gross wages for her entire period of employment at PCS, *cf.* Defs.' Mem. 11 n.10.

threats would deprive her of the $57/hour in premium pay for her hours over 40 guaranteed by the FLSA. Compl. ¶¶ 161–63, 171. DOL has accordingly exceeded the pleading requirement that an FLSA overtime plaintiff "sufficiently allege 40 hours of work in a given workweek." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). As described thoroughly above, DOL has also pleaded with specificity all relevant facts regarding how, when, and where Defendants have taken unlawful actions to attempt to recoup Vidal's and Miclat's wages, including their premium pay guaranteed by Section 207.[10] Under these circumstances, DOL has therefore also met the Second Circuit's pleading requirement to provide specific "factual context" for DOL's allegation that Defendants' attempts to recoup wages from Vidal corresponding to this workweek would reduce his pay below the required overtime amounts. *See DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88–90 (2d Cir. 2013).

Contrary to Defendants' contention, the absence of a specific monetary amount on the face of their arbitration petitions does not somehow make their demands against Vidal and Miclat

---

[10] As noted, DOL has pleaded the identities of two specific affected employees, the number of hours worked in specific workweeks, the applicable hourly rates in the overtime workweek, the details of Defendants' violative policies, and all facts necessary to calculate the wages below which Defendants' demands would cause a shortfall below the FLSA minimums. Accordingly, DOL's detailed allegations bear no resemblance to the insufficient complaints discussed at pages 16 and 17 of Defendants' brief. The complaint in *Walsh v. Lajala* did not list *any* numbers of hours worked or numerical rates of pay. 565 F. Supp. 3d 766, 772–73 (E.D.N.C. 2021). Similarly, the complaint in *Bland v. Edward D. Jones & Co.* failed to include any example of a pay period when a violation occurred. 375 F. Supp. 3d 962 (N.D. Ill. 2019). *Marcial v. New Hudson Family Restaurant* did not allege any kickbacks, improper deductions, or free and clear violations, so it is no surprise that the plaintiff's minimum wage claim was dismissed where the paychecks showed more pay than the minimum wage. No. 18-cv-663, 2019 WL 1900336, at *6 (S.D.N.Y. Apr. 29, 2019). Finally, the absence of any deductions on the face of the paycheck was fatal to the plaintiff's case in *Heuberger v. Smith* because the specific allegation was that improper deductions were made directly "from each paycheck[]." No. 16-cv-386, 2017 WL 3923271, at *9–10 (N.D. Ind. Sept. 7, 2017). *Heuberger* is irrelevant because Defendants' free and clear and kickback violations arise not from deductions made from paychecks, but from threats and demands against employees, as DOL has pleaded in detail.

incapable of any measurement, much less immunize Defendants at the pleading stage from accountability for their ongoing and aggressive actions to recoup wages from their former employees. *Cf.* Defs.' Mem. 15. Rule 8 does not require that DOL's Complaint identify a specific dollar amount of damages. *E.g.*, *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018). DOL's Complaint details with specificity the *categories* of asserted damages that ACS and Klein have threatened to claw back from Vidal's wages, and other costs Defendants have sought to shift, namely "future profits" and the "associated costs of the arbitration and ACS's attorneys' fees." *E.g.*, Compl. ¶¶ 97–99; *see id.* ¶¶ 2, 4, 6, 8, 11, 168, 171.

For example, DOL's Complaint details the range of wages that Defendants told Vidal they sought back from him in the arbitration for such profits: $9,000 per year, totaling $24,000 (for the remaining 2 ¾ years of his contract). *See id.* ¶¶ 97–99; *see also* Defs.' Mem., Ex. B (Defendant Klein's letter to Vidal threatening to seek damages of "*at least* $20,000 (not counting attorney's fees and costs))."[11] In that connection, ACS pleaded in the arbitration that its damages include the "profits" that ACS would have earned both from Vidal and a replacement nurse, whom ACS says it would have hired anyway, but complains will now profit less from because of Vidal's departure. Defs.' Mem., Ex. F ¶ 44. ACS identified the cost of recruiting that replacement nurse as "over $9,000" annually, in the same paragraph in which ACS described the "losses" for which it sought "to be made whole." Defs.' Mem., Ex. B; *see* Compl. ¶ 97. In other words, ACS tied the replacement cost of a new nurse to ACS's measure of future expected profits had Vidal not resigned. As such, DOL's specific allegation that Defendants seek at least $24,000 in future profits

---

[11] At the pleading stage, the Court may consider documents relied on in the Complaint, such as Defendants' demand letter and arbitration petition. Defs.' Mem. 3 n.4; *see Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

from Vidal (apart from attorneys' fees, the cost of arbitration, interest, and yet other claimed costs), is well supported. Compl. ¶¶ 95–99, 102; *see id.* ¶¶ 103–04 (ACS incurred $1,900 filing fee and $750 case management fee; arbitrator's hourly rate is $450/hour).[12] For its part, PCS's arbitration demand against Miclat makes the same lost profits argument, including a demand for profits PCS expected to earn not only from Miclat but also a replacement nurse. Defs.' Mem, Ex. D. And DOL's Complaint adequately pleads amounts that Defendants have demanded, such as would drive Miclat's wages below the FLSA's protected minimums in at least several workweeks. *See supra* at 13–15.

DOL's Complaint plainly pleads, with specificity, how each Defendant's demands to claw back wages exceed the amounts protected by the FLSA's minimum wage and overtime protections for both Vidal and Miclat in at least one workweek, and for Vidal's entire period of employment. DOL has satisfied Rule 8.

## III. Defendants cannot hide from their own written demands that employees kick back wages specifically to cover Defendants' future profits. Such demands violate the FLSA.

The FLSA prohibits employers from shifting costs that are "primarily for the benefit or convenience of the employer." *Soler v. G. & U. Inc.*, 833 F.2d 1104, 1109 (2d Cir. 1987). Defendants' brief pays little attention to the "benefit or convenience of the employer" standard, instead offering a series of ad hoc distinctions to wish away any cases where employees have prevailed in a challenge to employers' unlawful demands. Defs' Mem. 18–30 (incorrectly arguing

---

[12] Defendants are flat wrong that the $9,000/year threat should be disregarded in evaluating the sufficiency of DOL's Complaint. Defs.' Mem. 5 & n.5. To the extent there is any question about the precise amount of that ACS has sought to claw back from Vidal or that ACS has changed its theories of ACS's damages, such ambiguity must be construed in the light most favorable to DOL at the motion to dismiss stage. *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020).

that the FLSA permits employers to obtain the return of any amount of employees' wages regardless of the circumstances, as long as the employer frames the claim as one for breach of contract). Considering DOL's claims under the correct legal standard, it is easy to see why Defendants' motion must be denied.

DOL's claim arises from the FLSA's longstanding prohibition against employers devising any "arrangement that tend[s] to shift part of [their] business expense[s]" to employees, "to the extent [the arrangement] reduce[s] an employee's wage below the statutory minimum" in a workweek. *Ramos-Barrientos v. Bland*, 661 F.3d 587, 595 (11th Cir. 2011). Although employers may make lawful deductions from wages for certain expenses such as the "reasonable cost of lodging, board, and other facilities," 29 U.S.C. § 203(m)(1), the Act prohibits employers from shifting costs that are "primarily for the benefit or convenience of the employer," if employees' wages are brought below the amounts protected by the FLSA. *Soler*, 833 F.2d at 1109; *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 897 (9th Cir. 2013); 29 C.F.R. § 531.3(d)(1).[13] For costs that employers are required to bear, "there is no legal difference between deducting a cost directly from the worker's wages and shifting a cost." *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1236 (11th Cir. 2002); *see Stein*, 873 F.3d at 534–35 (FLSA prohibited employer's attempt to recoup wages post-employment). Under the FLSA, the term for employers' unlawful attempts to shift costs to employees is "kickbacks." 29 C.F.R. § 531.35; *see Stein*, 873 F.3d at 530.

Courts evaluate allegations of FLSA kickbacks by assessing whether the challenged "costs are primarily for the benefit of the employee or the employer." *E.g.*, *Arriaga*, 305 F.3d at 1243. In

---

[13] Even when a cost is of the kind that an employer may require employees to bear, the employer is prohibited from "includ[ing] a profit" in the employer's measure of costs. 29 C.F.R. §§ 531.3(b), 531.33(b).

a recently decided case on all fours, employees challenged, as a prohibited FLSA kickback, an employer's asserted damages for purported breach of an employment contract, demanded post-resignation. *Carmen v. Health Carousel, LLC*, No. 20-cv-313, 2023 WL 5104066, at *14 (S.D. Ohio Aug. 9, 2023). The district court explained that in evaluating such a claim, the proper inquiry is for the court to determine how the employer has framed and calculated its damages, "to determine whether they constitute permissible or illicit recoveries." In *Carmen*, the employer's asserted damages were in part to cover the employer's "own operating expenses," and the amount demanded for such "back office administrative support fees" reduced the employee's pay below zero in her last workweek. *Id.* at *15. The employee stated a kickback claim because the employer's demand for such "internal operating costs" were business expenses for the employer's benefit, not the employee's. *Id.* at *14.

*Carmen* perfectly illustrates why Defendants are not entitled to dismissal at the pleadings stage. The core of DOL's Complaint is that Defendants' arbitration demands and other actions impermissibly seek to claw back employees' wages to satisfy the employers' future "profits," and the associated attorneys' fees and costs of obtaining that future profit stream.[14] Taking Defendants' own demands at face value, they have framed their contract damages as for future anticipated "profits." Such profits are categorically for Defendants' benefit, just as the costs demanded by the employer in *Carmen*, and therefore are sums that the FLSA prohibits employers from clawing back

---

[14] *E.g.*, Compl. ¶ 11 ("The Secretary brings this action to enjoin Defendants from their unlawful conduct demanding future profits and related attorneys' fees and costs"); *see id.* ¶¶ 2 ("improper[] demand . . . measured by the amount of future profits"), ¶ 4 ("all to satisfy ACS's claim of future profits"), 6 ("PCS's claim of future profits"), ¶ 8 (FLSA does not permit "employer to treat workers as insurance for lost profits"), ¶¶ 168, 171 (Causes of Action describing Defendants' illegal demands that employees pay "anticipated future profits" and associated fees and costs).

from employees, to the extent that employees are brought below the FLSA's protected minimums. *Arriaga*, 305 F.3d at 142; *Carmen*, 2023 WL 5104066, at *14. If the law were otherwise, employers would have carte blanche to treat employees' wages as revocable on demand, whenever an employer has a change in its bottom line, to cover the routine costs of recruitment whenever an employee resigns, or even to cover the opportunity costs of a position being temporarily unfilled. Courts have long recognized that as a matter of law, employers are required to bear the risk of ongoing operating expenses, rather than treating workers as insurance against the risk of "usual losses." *E.g., Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1198–99 (5th Cir. 1972) (absent evidence of theft, FLSA prohibited employer from shifting costs of cash register shortages).

Instead of engaging with the FLSA kickback standard, Defendants spend pages attempting to cabin the reach of any cases where an employee has prevailed on an FLSA kickback claim, offering irrelevant distinctions and critiquing the cases as "limited." Defs.' Mem. 20–25. In actuality, the outcome of each case Defendants cite, including the cases decided in favor of the employers, are broadly consistent with the FLSA's distinction between whether the employer or the employee is the primary beneficiary of the cost at issue, and support DOL's claim.

The cases in which employers prevailed in the face of employees' FLSA kickback claims, *Heder*, *Gordon*, *Bland*, *Park,* and *Milford*, all involve challenges to training costs that employers incurred for *employees'* benefits, in large part because the training resulted in a transferrable license or credential. For example, in *Heder*, the Seventh Circuit emphasized that the training paramedics received would be "useful for years to come." *Heder v. City of Two Rivers*, 295 F.3d

777, 781 (7th Cir. 2002).[15] *Gordon* involved the costs of police academy training that was a similarly portable credential and not a condition of obtaining employment for employees already licensed. *Gordon v. City of Oakland*, 627 F.3d 1092, 1096 (9th Cir. 2010); *see id.*, Br. of Appellees, 2010 WL 2665044, at *28 (filed Feb. 8, 2010). *Bland*, too, involved training that culminated in "portable credentials." *Bland v. Edward D. Jones*, 375 F. Supp. 3d 962, 977 (N.D. Ill. 2019). The training in *Park* "resemble[d] what would be offered at a vocational school, "providing skills . . . marketable beyond any particular" employer or client. *Park v. FDM Grp. (Holdings) PLC*, No. 16-cv-1520, 2017 WL 946298, at *3 (S.D.N.Y. Mar. 9, 2017), *vacated in part on other grounds*, 2018 WL 4100524 (S.D.N.Y. Aug. 28, 2018). Finally, while the reasoning of *Milford v. Roehl Transport, Inc.*, is less than crystal clear, the facts are more consistent with a finding that the training was for an employee's benefit rather than an employer's. No. 22-cv-879, 2023 WL 2503495 (E.D. Wis. Mar. 14, 2023) (training was required only for "certain new hires" and covered topics including "competent, safe and efficient operation of tractor/trailers," not specific to the defendant-employer's operations).[16]

In contrast, employees have successfully pleaded FLSA kickback claims when they challenged employers' attempts to shift costs where the employer was the primary beneficiary, or because the employers' measure of costs included a prohibited profit. In *Ketner*, the district court found that the employer could not shift costs for a training that did not confer "any benefit that is

---

[15] Notwithstanding its kickback analysis, the Seventh Circuit nonetheless prohibited the employer from clawing back any wages that would bring the employee below the minimum wage for his final period, or claw back overtime premiums. 295 F.3d at 782–83.

[16] DOL does not take a position on whether all aspects of these cases were correctly decided, but rather observes that the outcome of the cases largely turns on facts suggesting that employers apparently provided legitimate and transferrable training, principally for employees' benefit.

recognized within the broader marketplace," making the training for the benefit of the employer. *Ketner v. Branch Banking & Trust Co.*, 143 F. Supp. 3d 370, 384 (M.D.N.C. 2015); *accord* 29 C.F.R. § 531.3(d)(1). *McClain* found that employees sufficiently alleged that the employers sought to recoup amounts for training that far exceeded the actual cost of the training. *McClain v. Cape Air*, No. 22-cv-10649, 2023 WL 3587284, at *6 (D. Mass. May 22, 2023). The outcome in *McClain* is consistent with the FLSA's prohibition against employers "includ[ing] a profit" in their measure of costs, even for items that may for employees' benefit. 29 C.F.R. §§ 531.3(b), 531.33(b).

For their part, Defendants' proffered distinctions are non-sequiturs.

First, there is nothing remarkable, much less relevant under FLSA kickback caselaw, about the fact that the employers in *Ketner* and *McClain* sought a "sum certain" from employees, rather than filing a state court action or arbitration to collect damages in an amount to be proven at a later stage. *Cf.* Defs.' Mem. 23–24. (The employers in *Heder*, *Gordon*, *Bland*, *Park,* and *Milford* all also sought a "sum certain" from their employees, for that matter). As discussed in Section II, the specific representations that Defendants have made in their demand letters and arbitration papers provide a sufficient factual basis for the Court to determine that DOL's Complaint contains enough detail regarding Defendants' misconduct. And as a general matter, there is no basis for Defendants to insist on a heightened pleading standard for FLSA claims beyond the federal rules, which do not require that a specific dollar amount of damages be identified at the pleading stage. *E.g.*, *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) (discussing Fed. R. Civ. P. 8). Nor is there any basis for inventing a blanket rule that an FLSA kickback claim should rise or fall based on whether the employer articulated its demand in a forum where a specific dollar amount of damages is precisely identified, much less at the pleading stage, which is often not a requirement under state law. *E.g.*, *Black v. Chittenden*, 69 N.Y.2d 665, 668 (1986) holding that in

New York, even when claims must be pleaded with particularity, "[i]t is not necessary . . . that the measure of damages be pleaded, so long as facts are alleged from which damages may properly be inferred.").

Second, there is nothing "pure" about Defendants' contract claims that somehow takes them outside of the FLSA's ambit. *Cf.* Defs.' Mem. 24. The U.S. Supreme Court has long held that "to allow waiver of statutory wages by agreement would nullify the purposes of the" FLSA. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *see Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) (FLSA rights are not waivable by contract). It would eviscerate the FLSA's protections to allow an employer to engage in prohibited kickbacks styled as a contract claim, no matter the facts underlying the damages sought.

Third, Defendants' explanation of the collateral benefits of legal permanent residency, Defs.' Mem. 25, is wholly irrelevant given the specific damages they seek, and which DOL's Complaint challenges: Defendants' attempts to claw back employees' earned wages to satisfy the employers' future profits, and associated attorneys' fees, costs, and interest. As *Carmen* instructs, this Court must look to how Defendants have framed those damages, to determine whether they constitute permissible or illicit recoveries. 2023 WL 5104066, at *14. The inquiry under the FLSA is not, as Defendants seem to argue, whether there was any consideration supporting the contract or any benefit to the employee from some aspect of the contract's

performance.[17] If the rule were so, then *all* damages an employer claimed under an employment contract would be permissible under the FLSA, no matter whether the employer sought to claw back some of those protected wages to hold employees responsible for the employer's own business expenses, or required employees to reimburse the employer for certain goods or services at a profit. But that is not the law. *E.g.*, *Carmen*, 2023 WL 5104066, at *14 (looking to whether "any portion" of the employer's demand to recoup wages violates the FLSA). Nor does DOL challenge Defendants' ability to seek reimbursement of any costs incurred, if for the benefit of an employee.

Defendants' final scattershot arguments generally accuse DOL's Complaint of sweeping too broadly, *see* Defs.' Mem. 26–29, once again disregarding the specific challenge that DOL has brought against Defendants' attempts to claw back employees' wages, to satisfy Defendants' future expected profits. Nothing in Defendants' parade of horribles points to any section of DOL's Complaint, or any specific argument that DOL has made. This case simply does not challenge the enforceability of employment contracts writ large, the validity under the FLSA of all agreements to arbitrate, all other possible applications of Defendants' form contracts, or the permissibility

---

[17] Separate from the FLSA's requirements, federal regulations "strictly prohibit" Defendants from shifting to their employees any "costs incurred in the labor certification or application process" for the EB-3 visas obtained for Vidal and Miclat. *See* U.S. Dep't of Labor Final Rule, Labor Certification for the Permanent Employment of [Foreign Nationals] in the United States; Reducing the Incentives and Opportunities for Fraud and Abuse and Enhancing Program Integrity, 72 Fed. Reg. 27,904, 27,904–05 (May 17, 2007) (discussing the EB-3 visa classification); 20 C.F.R. § 656.12(b) (prohibiting employers from "seek[ing] or receiv[ing] payment of any kind for any activity related to obtaining permanent labor certification"; such prohibition extends to "monetary payments; wage concessions, including deductions from wages, salary, or benefits; kickbacks, bribes, or tributes; in kind payments; and free labor"); 72 Fed. Reg. at 27,923 (excepting only where a third-party pays the costs and the third-party has a "pre-existing business relationship . . . that predates the labor certification process"); Defs.' Mem. 4, 7 (referring to the contract provisions referencing Vidal's and Miclat's EB-3 visas).

under the FLSA of all possible types of damages that Defendants might assert under those contracts. *Cf. id.* at 26–28.

This case does concern Defendants' actual and ongoing violations of the FLSA by demanding that employees give up their earned wages and pay out toward a future profit stream to pad the businesses' bottom line, plus fees and costs incurred by Defendants in squeezing those damages out of employees. Because DOL has Article III standing to pursue damages and declaratory and injunctive relief, and the Complaint pleads specific facts that state an FLSA cause of action, this Court should deny Defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Rule 12 motion and direct Defendants to answer DOL's Complaint.[18]

DATED:    September 14, 2023
New York, NY

SEEMA NANDA
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

BY:    /s/ Jason E. Glick
JASON E. GLICK
Senior Trial Attorney
(he/him/his)

/s/ Alexander M. Kondo
ALEXANDER M. KONDO
Senior Trial Attorney
(he/him/his)

U.S. Department of Labor,

---

[18] In an abundance of caution, should the Court grant Defendants' motion on any ground, DOL respectfully requests leave to amend.

*Attorneys for Plaintiff,*
*Acting Secretary of Labor*

U.S. Department of Labor
Office of the Regional Solicitor
201 Varick Street, Room 983
New York, NY 10014
(646) 264-3650
(646) 264-3660 (fax)
glick.jason.e@dol.gov
kondo.alexander.m@dol.gov
ny-sol-ecf@dol.gov