

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com

March 25, 2024

**David N. Kelley**  
D: +1 212 326 2106  
dkelley@omm.com

<u>BY ECF</u>

Hon. Nina R. Morrison  
U.S. District Court for the Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

Re:    *Secretary of Labor v. Advanced Care Staffing, LLC et al.*  
          No. 23-cv-2119-NRM-MMH

Dear Judge Morrison:

This firm, along with Dechert LLP, represents defendants Advanced Care Staffing, LLC ("ACS"), Priority Care Staffing, LLC ("PCS"), and Samuel Klein ("Klein," and together with ACS and PCS, the "Defendants") in the above-captioned action. Consistent with the Court's instruction at the March 22, 2024 oral argument with respect to Defendants' Motion to Dismiss, Defendants respectfully submit this letter to address authority post-dating September 28, 2023, when the parties filed the bundled motion to dismiss papers.

At oral argument, counsel for DOL suggested a recent decision from the United States District Court for the Southern District of Ohio is relevant to this Court's analysis of DOL's FLSA minimum wage and overtime wage complaint. *See Healthcare Facility Mgmt. LLC v. Malabanan*, No. 23-cv-236, 2024 WL 418978 (S.D. Ohio Feb. 4, 2024), *report and recommendation adopted*, 2024 WL 1192919 (S.D. Ohio Mar. 20, 2024). We believe DOL's reliance on *Malabanan* is misplaced and does not support DOL's position, for several reasons. First and foremost, the amounts giving rise to the alleged "kickbacks" in *Malabanan* were fundamentally different from those alleged in this action. As discussed at the oral argument, the amounts that DOL challenges here are not merely expenses incurred during employment "for the benefit of the employer," but are more generally any and all breach of contract damages arising from the employee's early termination of their employment agreement. In contrast, the employer in *Malabanan* alleged it "paid in excess of $50,000" for the plaintiff's relocation costs and that under its employment agreement those advanced relocation costs would be repaid over a three-year period. *See Malabanan* ECF No. 2 at 4, ¶¶ 7–8. During the course of the period during which the employee performed under the agreement, the employee was credited monthly on a *pro rata* basis, and if the employee-plaintiff failed to work for the employer for three years, plaintiff was required to repay the balance of the advanced relocation costs. *Id.* at 4, ¶ 9. The employment contract included the following paragraph:



> **9. How You Repay Us.**
>
> As described above, in the paragraph numbers 3, 7 & 8, certain costs incurred by CommuniCare on your behalf are considered advancements and relocation assistance eligible to be forgiven over a period of continued employment subject to certain conditions. You do not have to pay back the advance if you remain an employee of CommuniCare, comply with all CommuniCare policies, and meet work performance expectations for a period of thirty-six (36) months after the commencement of employment as an R.N. These advancements and relocation assistance will be forgiven over a period of thirty-six (36) months, at a rate of 1/36th for each month's service at CommuniCare. Federal, state and local taxing authorities may consider the forgiveness of these advancements and relocation assistance to be income subject to taxation.
>
> CommuniCare will act in accordance with those taxing authorities and apply any taxes required by the authorities. By accepting employment with CommuniCare, you agree to repay CommuniCare the initial incentive payment together with any balance of the advances and relocation assistance should you voluntarily terminate your employment at CommuniCare or should CommuniCare terminate your employment for any reason other than a layoff or facility closure during the thirty-six (36) month period. If you fail to repay at the time of the termination, CommuniCare may pursue restitution through legal channels. You also agree that CommuniCare shall have the right to withhold, offset or retain amounts which may otherwise be due to you as salary, wages or other wise to satisfy any amount due to CommuniCare by you.

*Id.* at 11–12. Here, by contrast, Defendants' claims against Vidal and Miclat relate to the harm Defendants suffered because of Vidal and Miclat's breach of contract. It is well-settled that employers can seek damages for their employees' breaches of contract and other legal obligations. *See, e.g.*, *Recovery Racing III, LLC v. Brown*, 2021 WL 9678666, at *3–6 (E.D.N.Y. Oct. 28, 2021) (denying motion to dismiss employer's breach-of-contract claims against former employee for breach of a non-solicitation agreement and misappropriation and misuse of confidential information); *Universal Marine Med. Supply, Inc. v. Lovecchio*, 8 F. Supp. 2d 214, 222 (E.D.N.Y. 1998) (denying motion to dismiss employer's misappropriation of trade secrets claim against former employee); *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 92 F. App'x 812, 814–15 (2d Cir. 2004) (affirming district court's award of lost profits to an employer when a former employee misappropriated confidential information and lured the employer's customers to a competitor). In such cases, the analysis is not whether the amounts at issue were expended for the employee's benefit, but rather whether the employee's breach of legal obligations caused harm to the employer. Significantly, **none** of these cases considered these claims as potentially violating the FLSA.

Next, the contract at issue in *Malabanan* set $16,000 as an amount for which the employee would be liable. In denying the employer's motion to dismiss, the court noted that it "cannot determine whether the 'repayment provision' would be treated as a proper 'liquidated damages' provision



under Ohio law or as an 'unconscionable, unreasonable, and disproportionate' penalty." *Malabanan*, 2024 WL 418978, at *8.  Unlike in *Malabanan*, the Defendants' contracts do not contain a liquidated damages provision; instead, the determination of damages owed (if any) for breach of contract is reserved to a neutral arbitrator applying all relevant laws, including the FLSA.  Additionally, when the employee in *Malabanan* resigned, the employer filed a "state court complaint alleg[ing] that Relocation Costs in excess of $50,000 were 'due and owing upon [his] resignation.'"  *Id.* at *2.  Here, Defendants have only sought all available damages consistent with applicable law.

Moreover, unlike here, the employment contract in *Malabanan* did not provide for the determination of damages by a neutral, but rather required immediate repayment of the advanced relocation costs upon termination of employment.  Defendants' employment contracts with Vidal and Miclat, on the other hand, have arbitration provisions requiring the arbitrator to resolve any claims consistent with "applicable law," which necessarily includes the FLSA.  *See* ECF No. 28-2 at 12; ECF No. 28-4 at 11.  This procedural guardrail ensures that employees' rights (including Vidal's and Miclat's) are protected under the FLSA; a guardrail absent in *Malabanan*.  And, unlike the employer's $50,000 breach of contract damages demand in *Malabanan*, here Defendants simply request "all available damages" for Vidal and Miclat's breaches of their employment contracts.  *See* ECF No. 28-5 at 8; ECF No. 28-7 at 7.

Further, although the Court in *Malabanan* found that the employee had standing to sue, *Malabanan*, 2024 WL 418978 at *12, it did so on facts markedly different from those here, including that:  (1) the employer sought to recover  relocation expenses payable immediately upon termination rather than *bona fide* contractual damages as determined in accordance with the FLSA; (2) the plaintiff alleged the defendant "brought and threatened to file **baseless** lawsuits"; and (3) the plaintiff reasonably believed he would suffer serious harm if he did not continue working for the defendant.  *See id.* (emphasis added).  DOL does not allege that Defendants have brought "baseless" lawsuits (in fact, DOL alleges almost nothing about employees other than Vidal and Miclat, *see* ECF No. 28-1 at 6, 9, 22), and necessarily a meritorious lawsuit for breach of contract would not result in an FLSA violation.  Similarly, DOL does not allege that either Vidal or Miclat believed they would suffer serious harm if they did not continue working for Defendants.  Indeed, DOL alleges that "Miclat did not want to stop working for PCS."  ECF No. 19 at 19, ¶ 152.  And DOL includes no allegations about the effect, if any, that ACS' June 22, 2022 letter had on Vidal.  *See id.* at 12–14, ¶¶ 95–113.  Finally, as discussed above, both Vidal and Miclat's arbitrations include the procedural guardrail of compliance with all applicable law, including the FLSA.

Finally, the court in *Malabanan* issued an extremely narrow decision regarding the plaintiff's FLSA claims.  First, the court concluded the plaintiff had standing to bring a declaratory judgment action regarding the repayment provision of his employment agreement.  *See Malabanan*, 2024 WL 418978 at *12.  Second, the court concluded that the plaintiff properly alleged the defendant was his employer.  *See id.* at *5–6.  The latter question (whether Defendants were Vidal and Miclat's employers) is not at issue in this case.  As to the former, for the reasons above the dramatically different facts in *Malabanan* render that court's analysis inapposite.



Accordingly, the *Malabanan* decision has no bearing on this Court's evaluation of Defendants' motion to dismiss DOL's minimum wage and overtime wage claims.

Respectfully submitted,

/s/ David N. Kelley

David N. Kelley

cc: Counsel of record (via ECF)